IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHERON RENA WADE, | § |
| Plaintiff, | § § § |
| V. | § CIVIL ACTION NO. H-18-2229 |
| ANDREW SAUL[1], COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § |
| Defendant. | § § |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[2] in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 13) and Plaintiff's Cross Motion for Summary Judgment (Document No. 17). After considering the cross motions for summary judgment, Defendant's response to Plaintiff's Motion for Summary Judgment (Document No. 18), the administrative record, the written decision of the Administrative Law Judge dated July 13, 2017, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this matter is REMANDED to the Commissioner for further proceedings.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration.

[2] On November 6, 2018, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 11.

## I.  Introduction

Plaintiff Sheron Rena Wade ("Wade") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits. Wade argues in two point in this appeal that: (1) "The ALJ failed to properly recognize and evaluate the limiting effects of Plaintiff's anxiety disorder;" and (2) "The ALJ failed to recognize and analyze the limiting [e]ffects of Plaintiff's hand impairments." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, and that the decision should be affirmed.

## II.  Procedural History

In November 2014, Wade applied for disability insurance benefits, claiming that she was unable to work since May 18, 2014, as a result of a meningioma, Type II diabetes, memory loss, osteoporosis, gastritis, colon polyps, high blood pressure, degenerative disc disease in her back, anxiety and depression. The Social Security Administration denied her application at the initial and reconsideration stages. After that, Wade requested a hearing before an ALJ. The Social Security Administration granted her request and an ALJ, Marjorie Panter, held a hearing on February 22, 2017, at which Wade's claims were considered *de novo*. (Tr. 64-129). On July 13, 2017, the ALJ issued her decision finding Wade not disabled. (Tr. 16-32).

Wade sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are

present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On May 10, 2018, the Appeals Council found no basis for review (Tr. 1-4), and the ALJ's July 13, 2017, decision thus became final. Wade seeks, with this proceeding filed pursuant to § 405g, judicial review of that final, adverse administrative decision.

The parties have filed cross motions for summary judgment (Document Nos. 13 & 17), which have been fully briefed and are ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against

the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

IV. **Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914

F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Wade had not engaged in substantial gainful activity since May 14, 2018, her alleged onset date. At step two, the ALJ determined that Wade had the following severe impairments: benign neoplasm of brain or nervous system (meningioma), depression, diabetes, hypertension, disorder of the thyroid gland, degenerative disc disease, cervicalgia, osteoporosis, obesity, and impingement syndrome of the left shoulder. At step three, the ALJ determined that Wade did not have an impairment or a combination of impairments that met or equaled a listed impairment, including Listings 11.05, 12.04 and 12.06. Prior to consideration of steps four and five, the ALJ determined that Wade had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), specifically, she can sit for six hours in an eight-hour workday, stand and/or walk for six hours in an eight-hour workday, and lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant is further limited to frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, frequently reach overhead with the left upper extremity, frequently handle and finger bilaterally, and perform detailed but not complex tasks." Using that residual functional capacity assessment, the ALJ concluded, at step four, that Wade could not perform her past relevant work as a customer service representative or customer complaint clerk. At step five, using that same residual functional capacity assessment, and relying on the testimony of a vocational expert, the ALJ concluded that there were jobs in significant numbers in the regional and national economy that Wade could perform, including parking lot cashier, rental clerk, and order caller, and that she was, therefore, through the date of the ALJ's July 13, 2017, decision, not disabled.

In this appeal, Wade raises only two issues – whether the ALJ erred by failing to recognize and evaluate the limiting effects of her anxiety disorder, and whether the ALJ erred by failing to recognize and evaluate the limiting effects of her hand impairments. Because those are the only issues raised by Wade, it is only the record evidence related to those two alleged impairments that will be considered herein.

V.   **Discussion**

The evidence in the record shows that Wade has, and has been both evaluated and treated for, anxiety. The ALJ did not, at step two, consider whether Wade's anxiety could be considered a severe impairment. Instead, the ALJ focused on Wade's depression – finding that it was severe, but making no determination, one way or the other, whether Wade's anxiety could be considered severe. Given the substantial record evidence of both Wade's diagnoses and treatment for anxiety, the ALJ's failure consider that alleged impairment at step two was error.

At step two, the claimant bears the burden of showing that she has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. The step two requirement that the claimant have a severe impairment is generally considered to be "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987)). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

7

Under the governing regulations, "If you do not have a *severe* medically determinable physical or mental impairment ... or a combination of impairments that is severe ..., we will find that you are not disabled." 20 C.F.R. § 416.920(a)(4)(ii) (emphasis added). But because the regulations require a claimant to show only "*a severe*" impairment, that is, *one* severe impairment in order to avoid a denial of benefits at step two, the failure to find a particular impairment severe at step two is not reversible in and of itself as long as the ALJ finds that at least one other impairment is severe. However, even if an impairment is found non-severe at step two, the ALJ must still "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [RFC]." 20 C.F.R. §§ 404.1545(e), 416.945(e); *see also* 20 C.F.R. § 404.1523; Social Security Ruling 96-8p, 1996 WL 374184, at *5; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

Here, the ALJ made no determination – at all – about whether Wade's anxiety was severe within the meaning of *Stone*. Because the medical records are replete with evidence of Wade's anxiety, the ALJ erred at step two by not determining, one way or the other, whether Wade's anxiety was severe. The ALJ's step two error does not, in and of itself, require remand. That is because the ALJ progressed beyond step two, and decided Wade's case at step five. *See Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (finding no basis for remand despite step two error where ALJ proceeded past step two and determined that the claimant "retained the residual functional capacity to do other work"). But, because the ALJ's consideration of Wade's anxiety is completely intertwined with and subsumed in the ALJ's consideration of Wade's depression, it cannot be said that the ALJ recognized and considered the limiting effects of Wade's anxiety.

8

The record shows that in and around the time Wade was diagnosed with a brain lesion (meningioma) in mid-2013, she complained of memory problems and a decrease in her functional abilities. (Tr. 505-507). Although Wade had some anxiety prior to the MRI upon which her meningioma diagnosis was based (Tr. 505, 507), her anxiety significantly worsened after that diagnosis (Tr. 363-365). From that date of diagnosis forward, Wade's medical records *consistently* note her anxiety disorder, with her treating physicians describing it as Wade being constantly worried about her health (Tr. 1012-1013). In January 2015, Dr. Shamsuddin Khwaja, Wade's neurologist, sent her for a mental status exam and a neuropsychological evaluation. William Cofield, a psychologist, conducted a Clinical Interview and Mental Status Examination on February 2, 2015. He found, upon mental status exam, the following:

> She correctly recalls the year but misrecalls the day as January 20th. She correctly recalls her date of birth, age and social security number. When asked to list the last 3 or four presidents, she gives Obama and Clinton, apparently with no recognition there were others. Immediate recall of 3 unrelated words was correct. At a 5-minute inter[val] she recalled one. She cried when this happened, as she knew she was not remembering all the words. She correctly recalled 5 digits forward and 4 digits backward. On serial 7's from 100 she said she didn't know and that she couldn't do it without a paper and pencil. She gave the same response for serial 3's from 100. She did correctly multiply 4x5 and 7x6 but missed 8x3 as 27, 9x4 as 27 and said she didn't know 31x3. Social judgment is seen to be intact. We estimate her intellectual ability to be within the average range. She was polite, eye contact was good, but she was depressive and tearful throughout the interview.

(Tr. 892). Cofield diagnosed Wade with "Major Depressive Disorder with chronic Generalized Anxiety Disorder," with some deterioration in her condition since 2013. Richard Allan Phenis, also a psychologist, conducted a comprehensive neuropsychological evaluation on July 14, 2015. Part of that evaluation, a neurocognitive exam revealed:

> SLUMS score was 18/30. The patient recalled two of five words that she was asked to remember following a brief delay. She failed to benefit from semantic clues with the remaining words but correctly identified two of the three remaining words when

9

provided with multiple-choices. She only stated 11 animals within a minute, incorrectly calculated change based on a read mathematical problem, and made minor errors when drawing a clock. She also incorrectly answered two out of four questions about a story read aloud. Orientation, stating numbers in reverse order, and identifying a shape were preserved. On a clock drawing test, the patient made minor spatial errors with number placement, failed to differentiate between the lengths of the clock's hands, and mildly displaced the hour hand. When asked to copy a clock from a stimulus, she failed to clearly differentiate between lengths of the clock's hands and mildly misplaced the hour hand.

(Tr. 1005). In terms of Wade's test-taking behavior, Phenis found that "rapport was adequately established and improved as the session progressed;" her "[g]ait and posture appeared normal;" she had "[s]ome word-finding problems;" her comprehension was intact; she "[r]eacted with mild anxiety when experiencing difficulties;" she "[e]mployed inefficient strategies when approaching tests . . . [and] "made set loss errors and required occasional clues;" her attention was adequate; and her motivation and cooperation were adequate. (Tr. 1005). In the "diagnostic impressions" section of his report, Phenis wrote:

- The patient reported the onset of cognitive difficulties, along with personality/emotional changes, around the time of diagnosis of meningioma, with the onset of anxiety reportedly occurring just prior to diagnosis. She endorsed cognitive fluctuations with days when she believes that he has returned to her baseline level of cognitive functioning.

- Performance on an embedded effort measure was below expectations along with variability (on design fluency, performance improved on the more difficult trial) and suggested that the patient's effort during portions of testing was inadequate. However, a standalone measure of effort along with other embedded measures of effort was within expectations. As such, the following results are considered cautiously and only as lower bound estimates of her optimum cognitive functioning. With this caveat in mind, testing revealed below expectation performance for constructional ability and variable retrospective memory performance. With verbal memory, recall of a word-list was generally preserved, whereas recall of stories was mildly below expectations with preserved recognition. Visual memory was below expectations but an embedded validity measure that was part of one of the visual memory tasks was also below expectations. In addition, on one of the visual memory tasks, her poor initial copy of a design likely negative

10

- impacted her ability to recall the information after a delay. There were indicators across memory measures that the patient benefitted from repetition. Conversely, based on estimated pre-morbid intellectual functioning, in addition to a recall of a word-list, prospective memory, language abilities, visuospatial judgment and reasoning, processing speed, attention, and executive functions were relatively preserved. Regarding functional skills, the patient endorsed relying on GPS due to frequently becoming lost/turned around while driving, receiving assistance with financial management due to forgetting to make bill payments, and occasionally forgetting to turn off the stove.

- Motorically, mild balance problems, left hand index finger twitch, and decreased bilateral hand strength were endorsed. In addition, pain on the left side, left arm numbness, and occasionally smelling smoke when it is not present were acknowledged. A measure of finger tapping was generally preserved, whereas motor dexterity was notable for the patient's dominant hand being statistically slower than her nondominant hand. Moderate depression and anxiety, along with a current stressor (i.e. aunt diagnosed with cancer and informed has three months to live), were endorsed.

- Overall testing was inconsistent with a cognitive disorder at this time. Although complex constructional ability and visual memory were below expectation, there was an embedded validity measure on one of the visual memory tasks that indicated poor task engagement. Moderate affective distress along a recent stressor and possible medication side-effects (e.g., clonazepam) likely contributes, at least in part, to reported cognitive difficulties and may have contributed to her difficulty consistently engaging in testing as well as her reported cognitive fluctuations outside of testing.

(Tr. 1008-1009). Similarly, Dr. Khwaja, while noting that Wade's meningioma was benign and stable, found that Wade had significant problems with anxiety. Those problems continued through 2016, despite Wade's treatment with both a psychiatrist (Dr. David Gavito) and a licensed professional counselor (Amy Ellenn Casey). As late as November 2016, Dr. Khwaja described Wade's inadequately controlled anxiety as her "predominant problem amongst all [of] her medical problems" (Tr. 1157-60). Upon this record, where Wade's anxiety disorder was diagnosed, evaluated and treated throughout the extensive medical records considered by the ALJ, the ALJ's failure to consider, and determine, whether Wade's anxiety was a severe impairment was error.

In addition, upon this record, that error cannot be said to be harmless. In determining that Wade's mental impairment(s) only limited her mental functioning insofar as she could "perform detailed but not complex tasks," the ALJ conducted a thorough review of Wade's medical records, including the expert medical opinions contained therein, and concluded that while Wade has mental limitations, she retains the ability to "understand, remember, and carry out detailed but not complex instructions." (Tr. 29). That determination is made by reference to the medical evidence and opinions in the record, but it is not made by reference to any particular mental impairment. In other words, the ALJ did not attribute Wade's mental limitations to the impairment he found to be severe – Wade's depression – and also did not attribute Wade's mental limitations to her anxiety disorder. Instead, the ALJ considered Wade's depression and her anxiety to be one in the same although none of her treating physicians considered them as such. In addition, because the ALJ did not consider whether Wade *had* an anxiety impairment, there was no consideration or determination of whether the mental limitations found by the ALJ were associated with Wade's depression, Wade's anxiety, or both.

The Commissioner's briefing in this appeal adds nothing helpful in this regard. Instead of arguing that the ALJ's error at step two was harmless, the Commissioner points to a lone reference in the record, from 2013, that Wade's "anxiety responded to medication and was noted as stable in November 2013," *see* Defendant's Reply (Document No. 18) at 2, and argues that there is substantial evidence in the record to support the ALJ's determination that Wade's mental impairments are not disabling. That argument, like the ALJ's consideration, tends to equate Wade's anxiety with her depression, when the medical evidence in the record does not do so. Despite the ALJ's consideration, and as is made clear by the separate listings for "affective disorders" (Listing 12.04)

and "anxiety related disorders" (Listing 12.06), anxiety and depression are not the same impairment. The ALJ's RFC determination, which is not even based on an acknowledgment that Wade has anxiety, much less anxiety that is severe under step two, cannot be said to have incorporated limitations into Wade's RFC related to Wade's anxiety. On this record, the ALJ's error at step two relative to Wade's anxiety was not harmless, necessitating remand to the Commissioner for further proceedings.

VI.   **Conclusion and Order**

Based on the foregoing, and the conclusion that the ALJ erred at step two, and that error is not harmless, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 17) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 13) is DENIED, and this case is REMANDED to the Social Security Administration pursuant to 42 U.S.C. § 405g, for further proceedings consistent with this opinion.

Signed at Houston, Texas, this ___20th___ day of September, 2019.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE